

**FILED**
**Jun 25, 2026**
**01:41 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Jayne-Anne Patrick | Docket No. 2025-60-6990 |
| v. | State File No. 57728-2024 |
| Topgolf, et al. | |

Appeal from the Court of Workers'
Compensation Claims
Dale A. Tipps, Judge

---

### Affirmed in Part, Reversed in Part, and Remanded

---

In this interlocutory appeal, the employer asserts the trial court erred in awarding additional temporary disability benefits. The employee sustained an injury to her left knee when she slipped on a wet floor at work. Her claim was accepted as compensable, and certain medical and temporary disability benefits were provided. The employee underwent surgery to repair a torn meniscus and was placed at maximum medical improvement approximately six-and-a-half months later. After a different specialist recommended a second surgery, the employee sought additional temporary disability benefits. The employer denied that request and argued that the original physician's determination of maximum medical improvement had not been retracted or otherwise shown to be premature. Following an expedited hearing, the trial court awarded additional temporary disability benefits from the date the second specialist recommended surgery, and the employer has appealed. Having carefully reviewed the record, we affirm in part and reverse in part the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Tiffany Sherrill Hranicky, Knoxville, Tennessee, for the employer-appellant, Topgolf

Martin Sir, Nashville, Tennessee, for the employee-appellee, Jayne-Anne Patrick

### Factual and Procedural Background

Jayne-Anne Patrick (Employee) worked at Topgolf ("Employer") as a bartender. On June 1, 2024, Employee was restocking a beer cooler when she slipped on a wet spot,

struck her left knee on a wall, and fell backwards. Employee testified she told her supervisors "in passing" about the accident that night, then gave notice to her manager the next morning. Employer accepted the accident as compensable and provided certain medical and temporary disability benefits.

Employee eventually came under the care of Dr. Calvin Robinson Dyer at Tennessee Orthopedic Alliance. In Dr. Dyer's first report dated September 20, 2024, he noted Employee's history of slipping and falling at work and her complaints of left knee pain. X-rays of the left knee did not reveal any bony abnormalities. Dr. Dyer ordered a left knee MRI, but the report from that diagnostic scan is not in the record. Dr. Dyer diagnosed a "complex tear of the medial meniscus . . . left knee." He recommended surgery, which was performed January 16, 2025. In the operative report, Dr. Dyer confirmed a left medial meniscus tear, which he repaired, and also noted "chondral blister grade 3 medial femoral condyle." After surgery, Employee attended a course of physical therapy. As of February 27, 2025, Dr. Dyer released her to return to restricted work duty, including no squatting, kneeling, or climbing, and advised her to alternate sitting and standing for thirty minutes at a time.

In his April 30, 2025 report, Dr. Dyer stated he anticipated "maximum medical improvement with return to regular duty" in five to six weeks. However, on May 29, he ordered work hardening due to Employee's continued complaints of pain, although he stated he believed her complaints were "out of proportion or beyond expectations." Employee's work restrictions continued during this time, and she attempted to work approximately three shifts but testified during the expedited hearing she was unable to perform some of her work duties. Employee testified that Employer was unable to accommodate her restrictions, and she was eventually "auto-terminated."

In a written report dated June 27, 2025, Dr. Dyer placed Employee at maximum medical improvement ("MMI") as of June 26. He assigned a 1% permanent medical impairment rating with no work restrictions. Specifically, Dr. Dyer stated that "[a]ny deficits for work will simply be her choice." On July 13, 2025, Employer terminated Employee's temporary disability benefits based on Dr. Dyer's MMI determination.

During the expedited hearing, Employee asserted her pain improved somewhat after surgery, but she developed ongoing symptoms and "physically couldn't go back to work." She testified she could only walk for five minutes at a time without support, her knee stayed swollen, and her leg turned purple. She sought additional medical treatment on her own and was evaluated by Dr. Tiffany Meals in mid-August 2025. Dr. Meals recommended a left knee MRI, but the report from that scan is not contained in the record. On September 9, 2025, Dr. Meals stated that "[Employee] will need surgical arthroscopy of the left knee for plica excision and lateral release." She then commented, "This is from her work related injury that she has not improved from." Dr. Meals did not address MMI.

2

On November 19, 2025, Employee selected Dr. William Garside from Employer's panel for a second opinion on the need for additional surgery. In Dr. Garside's December 3, 2025 report, he indicated he had reviewed medical records, including diagnostic scans, and completed a physical examination. Dr. Garside stated Employee had "persistent chronic left knee pain," but her post-surgical MRI "reveals no recurrent pathology." He recommended additional strength training and the use of a brace for symptom management. He stated that "[s]urgical treatment is not recommended at this time" and that Employee "can continue full unrestricted duties and activities." He recommended she follow up with Dr. Dyer given that he had performed the prior surgery, but Dr. Dyer declined to treat Employee at that point.

Once Dr. Dyer declined to see Employee again, Employer agreed to provide another panel of specialists, from which she chose Dr. Sean Kaminsky. In his January 5, 2026 report, Dr. Kaminsky reviewed Employee's history of knee pain and prior medical records, including Dr. Dyer's operative report. Dr. Kaminsky noted that, "[d]espite both conservative and surgical treatment[,] [Employee] has been having continued pain." He also noted, however, that her postoperative MRI "did not reveal any significant abnormalities." Dr. Kaminsky diagnosed left knee pain and chondromalacia. With respect to further possible treatment, Dr. Kaminsky stated:

> We discussed options of simply living with the symptoms, medications[,] activity modification[,] and icing. [Employee] feels she has tried all of these treatments[,] including surgery[,] without success. We discussed as a last option revision knee arthroscopy. However, I discussed I cannot guarantee this will resolve symptoms, but few other options remain at this point.

Thereafter, Employee filed a request for an expedited hearing, seeking an order compelling Employer to authorize additional surgery and pay additional temporary disability benefits. Several days before the hearing, Employer agreed to authorize the surgery with Dr. Kaminsky, and the parties proceeded to the expedited hearing on the issue of Employee's claim for additional temporary disability benefits. Employee also asked the court to reflect in its order that Employer would be responsible for reasonable and necessary medical expenses, including surgery, with Dr. Kaminsky.

Following that hearing, the court issued an order compelling Employer to provide medical treatment "made reasonably necessary by [the] June 1, 2024 injury . . . , including the surgery recommended by Dr. Kaminsky." It also concluded that Employee was entitled to additional temporary disability benefits beginning as of the date Dr. Kaminsky recommended surgery, reasoning that "the underlying premise that [Employee] reached [MMI] has now proven to be premature and incorrect, as suggested by the need for a second

3

surgery." The court further noted that "[n]o contrary opinion from Dr. Dyer was offered as evidence." Employer has appealed.[1]

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

## Analysis

We previously addressed an employee's entitlement to temporary disability benefits following an authorized physician's determination of MMI in *Mansell v. Southeast Personnel Leasing, Inc.*, No. 2023-07-5993, 2025 TN Wrk Comp. App. Bd. LEXIS 9 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2025). In that case, the employee reported a back injury and received authorized medical treatment. *Id.* at *2. After that physician placed the employee at MMI, he sought additional medical treatment approximately ten months later. *Id.* at *4. Following a lengthy period of additional treatment for both work-related and non-work-related medical conditions, the employee sought additional temporary disability benefits, which the trial court awarded. *Id.* at *6. On appeal, we reversed the award of additional temporary benefits, explaining as follows:

> [T]o affirm the trial court's finding with respect to [the employee's] claim for additional temporary disability benefits, we would be required to conclude that the authorized treating physician's original MMI determination

---

[1] In her request for an expedited hearing, Employee also sought an award of attorney's fees for Employer's alleged failure to timely authorize the second surgery and pay additional temporary disability benefits. That request was denied, and that determination was not appealed.

was premature or medically incorrect in some way without any expert medical opinion to support such a conclusion. This we cannot do, as such a conclusion would be speculative. As we have noted previously, "judges, like lawyers, are poorly positioned to formulate expert medical opinions." *Love v. Delta Faucet Company*, No. 2015-07-0195, 2016 TN Wrk. Comp. App. Bd. LEXIS 45, at *15-16 (Tenn. Workers' Comp. App. Bd. Sep. 19, 2016); *see also Scott v. Integrity Staffing Solutions*, No. 2015-01-0055 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8 (Tenn. Wrk. Comp. App. Bd. Aug. 18, 2015) ("Judges are not well-suited to second-guess a medical expert's treatment, recommendations, and/or diagnoses *absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record*.") (Emphasis added).

*Id.* at *11-12.

In the present case, the trial court initially determined that Employee had "offered no expert medical proof that Dr. Dyer placed her at MMI prematurely or that he had retracted that determination or otherwise reversed his opinion." As a result, the court concluded that Employee "has not yet shown she is likely to prove entitlement to temporary disability benefits between June 26, 2025, and January 5, 2026." However, the court distinguished the current case from *Mansell* and determined that once Dr. Kaminsky recommended a second surgery on January 6, the "underlying premise that [Employee] reached [MMI] has now proven to be premature and incorrect, as suggested by the need for a second surgery." In support of this determination, Employee cited a 1994 unreported opinion from the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel in *Wise v. Murfreesboro Health Care Ctr.*, no number in original, 1994 Tenn. LEXIS 389, at *9 (Tenn. Workers' Comp. Panel Dec. 22, 1994).

In *Wise*, the Appeals Panel affirmed an award of additional temporary disability benefits following a subsequent surgery. Significantly, the second surgeon testified that "the original condition and surgery resulted in a weakened condition that rendered [the employee] susceptible to a spontaneous subsequent rupture." *Id.* at *8. The court then noted that the second period of temporary disability "followed the second surgery" and, consequently, "the trial judge correctly awarded additional compensation for that time frame." Thus, in *Wise*, the Appeals Panel relied on expert medical testimony supporting a second period of temporary disability following the second surgery. *Id.*

We conclude there are critical differences between *Wise* and the present case. Unlike in *Wise*, the recommended surgery in the present case had not yet occurred as of the date of the hearing at which additional temporary benefits were sought. The subsequent period of temporary disability in *Wise* was premised on evidence of the employee's disability *following* surgery for a condition the surgeon testified arose from the original work injury. The trial court in *Wise* did not award additional temporary disability benefits

5

as of the date the additional surgery was *recommended*, as is the case here.[2]  Moreover, there is conflicting evidence in the record as to whether Employee was under any current work restrictions as of the date she first saw Dr. Kaminsky.  According to Dr. Dyer's June 25, 2025 report, Employee "will not have any permanent restrictions."  Dr. Garside reiterated this in his December 3, 2025 report, stating, "She can continue full unrestricted duties and activities."  Yet, Dr. Kaminsky stated without explanation in his January 5, 2026 report, "She currently is on work restrictions."  He then assigned light duty restrictions as of the date of his examination, but there is no evidence in the record as to whether those restrictions were presented to Employer and/or whether there was any discussion about a return to work in light of any such restrictions.

In sum, the critical question in the present case is whether an award of additional temporary disability benefits after an authorized physician's MMI determination can be based on purely circumstantial evidence.  We conclude it cannot.  Injured workers who are treated and placed at MMI will often need additional medical treatment caused primarily by the work injury.[3]  The fact that additional treatment is medically necessary does not, standing alone, negate a prior determination of MMI.  Instead, to support an award of additional temporary disability benefits after an authorized physician's MMI determination, the employee must present evidence from either the original authorized physician or another medical expert stating that the previous MMI determination was premature and/or should be retracted.  *Mansell*, 2025 TN Wrk Comp. App. Bd. LEXIS 9, at *12.  Absent such evidence in the present case, we are compelled to reverse the award of additional temporary disability benefits at this stage of the case.

**Conclusion**

For the foregoing reasons, we affirm the trial court's order to the extent the court ordered Employer to provide additional medical treatment it has agreed to provide, we reverse the award of additional temporary disability benefits, and we remand the case for further proceedings.  Costs on appeal are taxed to Employee.

---

[2] The issue of post-surgery disability was discussed during the hearing.  The court asked counsel for Employer during closing arguments whether Employer would voluntarily pay additional temporary disability benefits if Dr. Kaminsky were to restrict Employee from working after the revision surgery.  Counsel replied that should Dr. Kaminsky indicate Employee is not at MMI after surgery, "then obviously my client will reconsider."  We conclude it is premature, at this point, to address any entitlement to additional temporary disability benefits post-surgery based on expert medical evidence currently in the record.

[3] This analysis presumes that the authorized physician's MMI determination pertains to the same condition for which additional treatment has been recommended.  Employees with multiple injuries resulting in more than one medical condition must be placed at MMI separately for each compensable condition.